## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

UNITED STATES OF AMERICA and
STATE OF INDIANA ex rel. DARLENE
BARNES, RELATOR,

        Plaintiff,

        v.

                                         CAUSE NO.: 2:18-CV-113-TLS

MID-AMERICA PSYCHOLOGICAL &
COUNSELING SERVICES, PC,

        Defendant.

### OPINION AND ORDER

The Relator Darlene Barnes brings a Complaint against Defendant Mid-America

Psychological & Counseling Services, P.C., alleging that the Defendant knowingly made false

claims to the government for payment of its health services when it submitted bills for

psychological testing that had used photocopied test materials. This matter is before the Court on

the Defendant's Motion to Dismiss Relator's Amended Complaint [ECF No. 49]. For the reasons

set forth below, the Court grants the motion.

### PROCEDURAL BACKGROUND

The Relator filed a False Claims Act Complaint [ECF No. 1] against the Defendant on

March 21, 2018. The United States of America and the State of Indiana declined to intervene.

ECF Nos. 9, 10. The Defendant filed an Answer [ECF No. 26] and a motion for judgment on the

pleadings [ECF No. 33]. In response, the Relator filed a motion to amend complaint [ECF No.

35]. The Court granted the Relator's motion to amend, denying the motion for judgment on the

pleadings with no substantive ruling. ECF No. 48. The Amended Complaint [ECF No. 55]

alleges in Counts I and II, respectively, that the Defendant filed false claims in violation of the federal False Claims Act and the Indiana False Claims Act.

The Defendant then filed the instant Rule 12(b)(6) motion to dismiss [ECF No. 49]. In response, the Relator moved to strike the motion to dismiss. The Court denied the Relator's motion to strike and, in the interests of justice, granted the Relator a final opportunity to respond substantively to the motion to dismiss. ECF No. 64. The Relator filed a two-page response with no legal citations and no argument why her amended pleading should not be dismissed other than a short response on the element of materiality. ECF No. 65. The Defendant then filed its reply brief. ECF No. 66.

## MOTION TO DISMISS STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claims of fraud brought under the FCA and the Indiana False Claims Act are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a relator to "state with particularity the circumstances constituting fraud or mistake." *Lanahan v. County of Cook*, 41 F.4th 854, 861–62 (7th Cir. 2022) (quoting Fed. R. Civ. P. 9(b)). The "precise level of particularity required under Rule 9(b) depends upon the facts of the case," but the pleadings generally should describe "the who, what, when, where, and how of the fraud." *Camasta*, 761 F.3d at 737; *see United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 739 (7th Cir. 2021) (recognizing that a plaintiff's allegations must be "precise" and "substantiated," though "courts and litigants should not 'take an overly rigid view of the formulation'" (citation omitted)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## FACTUAL BACKGROUND

The following allegations are taken from the Amended Complaint. Between 2013 and 2017, the Relator Darlene Barnes, Psy.D. was employed as an independent contractor at Mid-America Psychological & Counseling Services, PC. Am. Compl. ¶ 3, ECF No. 55.

## A.     General Background on Claims Procedures

Title XVIII of the Social Security Act established the Health Insurance for the Aged and Disabled program, known as Medicare. *See id.* at ¶ 4. The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services (CMS), administers and reimburses health care providers for claims filed on behalf of their patients with Medicare coverage. *Id.* at ¶ 5. CMS publishes a compilation of its required billing practices primarily in two manuals known as the Medicare Claims Processing Manual and the Medicare Integrity Manual. *Id*. at ¶¶ 6, 8.

Title XIX of the Social Security Act established a means-tested medical funding source known as Medicaid. *Id*. at ¶ 9. Each state funds and administers its own Medicaid program while CMS monitors the state-run programs and establishes requirements for service delivery, quality, funding, and eligibility standards. *Id*. at ¶ 10. Indiana's Medicaid program is administered by the Family and Social Services Administration's Office of Medicaid Policy and Planning (OMPP). *Id*. at ¶ 11. CMS and OMPP have established billing and coding requirements that must be followed by healthcare providers seeking reimbursement from Medicaid. *Id.* at ¶ 12.

To receive payment for services from Medicare or Medicaid, including for standardized testing, health care providers must submit claims for payment on a CMS 1500 paper form or its electronic counterpart, the X12 837 form. *Id*. at ¶ 13. By submitting a bill through Medicare or Medicaid, the provider is presenting a claim for payment. *Id.* at ¶ 14.

Medicare, Medicaid, CMS, and OMPP require that adequate documentation exist in the patient's record for the ICD Code under ICD 9 (until 2015) and ICD 10 (since 2015) placed on forms for submission, "including certification of standardized test results [that] apply to the ICD Code on the claim form." *Id.* at ¶ 15. If the billed service does not conform to a particular ICD code, absent an explanation, the bill will be rejected by Medicare or Medicaid and government subsidized insurance. *Id.* at ¶ 16. CMS and OMPP require that this documentation include a "Prior Authorization" for psychological testing from a third party provider, orders for standardized psychology testing with the number of units, DSM diagnosis for mental disorder, any significant medical diagnosis, rehabilitation diagnosis, mental health history, progress notes that describe the beneficiary's response to therapy and psychological status, standardized test results, a psychological report, and other documentation supporting the beneficiary's need for the skilled services. *Id.* at ¶ 17. If documentation does not exist in the patient's record to verify the

4

standardized tests given and treatment represented by an ICD code, the ICD code should not be submitted. *Id.* at ¶ 18.

**B.     The Defendant's Billing Practices**

Between 2013 and 2017, billing was the responsibility of the owners, Kaylani Gopal, Ph.D. and Jaswinder Singh, Ph.D. *Id.* at ¶ 19. The coding and data entry for the claims was done by staff Shelley Joseph or Terri McDaniel at the Defendant's billing office in Merrillville, Indiana. *Id.* The Relator includes a list of 104 "standardized psychology tests" administered by the Defendant. *Id.* at ¶ 20. The Relator alleges that "[s]tandardization is the uniformity of procedures and testing materials; every test taker gets tested in the same manner with original standardized tests." *Id.* at ¶ 21.

Between June 2013 and January 2017, psychological testing was initially done by the Defendant's treating or clinical psychologists in the clinic and was then certified as standardized testing by Dr. Gopal and Dr. Singh. *Id.* at ¶ 22. Documentation was then forwarded to the Defendant's billing office for presentation of the claims, either electronically or by mail, to government subsidized insurance, Medicare, and Medicaid. *Id.* Dr. Gopal and Dr. Singh maintained exclusive control of the ability to edit, modify, or reject all coding and data entry of bills before submission for payment, and they had the ability and duty to refuse to transmit an improper claim. *Id.* at ¶¶ 24, 25.

Between 2013 and 2017, the Relator learned of "longstanding, systemic and pervasive non-standardized testing" by the Defendant. *Id.* at ¶ 26. The Relator lists twenty-three specific instances, each involving a different patient, in which the Defendant's "agents or employees knowingly or intentionally tested, billed, and received payment by the government though Medicare, Medicaid, and government subsidized insurance using non-standardized photocopied tests instead of standardized original tests." *Id.* at ¶ 27. Each of the twenty-three paragraphs

5

alleges (1) the date of the testing, (2) a patient identifier, (3) that the Defendant "performed psychological testing on [the patient] using non-standardized photocopies instead of standardized original tests" (only the last four subparagraphs identify the tests given), (4) that the Defendant received payment for administering the tests from Medicare, Medicaid, and government subsidized insurance, (5) that Medicare, Medicaid, and government subsidized insurance "[do] not pay for testing using non-standardized photocopies instead of standardized original tests," and (6) that "payment would not take place if [the Defendant] disclosed the use of non-standardized photocopies instead of standardized original to test patients." *Id.* at ¶¶ 27(1)–(23).

When the Relator asked for original standardized psychological tests, Dr. Gopal and Dr. Singh had other employees test her patients instead. *Id.* at ¶ 28. Most psychological tests given during the Relator's employment were "photocopied non-standardized tests instead of standardized original tests billed and paid by government" under the Defendant's "false and fraudulent claim they used standardized testing." *Id.* at ¶ 29. "Besides the false and fraudulent use of non-standardized photocopies of standardized tests having no value since they have no source to compare, photocopying tests also violate existing copyright laws, since photocopying for use standardized original tests is a copyright infringement." *Id.* at ¶ 30.

Under the subheading "Social Security Disability Testing," the Relator identifies seven dates on which "non-standardized photocopied tests" were used in social security disability testing, for which the Defendant billed and received payment. *Id*. at ¶ 31. The Relator also alleges that, between 2013 and 2017, photocopies of tests were used during up to twenty-one social security disability evaluations every Thursday. *Id*. at ¶ 32.

Under the subheading "Upcoding," the Relator alleges generally that the Defendant billed and received payment for therapy when providing biofeedback services, even though therapy services were not part of the treatment. *Id*. at ¶¶ 33–40. The Relator alleges that this practice

6

"caused bills to be knowingly and intentionally transmitted to government subsidized insurance,

Medicare and Medicaid which contained false or fraudulent information to get false or fraudulent

claims paid." *Id.* at ¶ 37. In support, the Relator lists three specific dates on which Stacy Lefing,

Psy.D. performed neuro feedback, a non-covered treatment with ICD Code 90901, on a specific

patient; the Relator then alleges that, for each, the ICD Code of 90837 for therapy, a covered

treatment, was entered on the bill ultimately transmitted for payment by government subsidized

insurance, Medicare, and Medicaid, with one of the claims paid. *Id.* at ¶¶ 38–39. The Relator

alleges that "[t]he biofeedback billed as therapy is false and fraudulent since ICD 90901 is not

covered." *Id.* at ¶ 38(2).[1]

Under the subheading "Excessive Testing," all the allegations are based on the use of

"stapled photocopies instead of standardized original psychological tests." *Id.* at ¶¶ 46–49.[2] The

majority of patients were administered more than one test. *Id.* at 46 (p. 20). Finally, the Relator

alleges: "To the extent the false claims as described above were presented by [the Defendant] to

CMS, or government subsidized insurance, . . . such conduct by the [Defendant] constitutes

making false or fraudulent claims under 31 U.S.C. § 3729." *Id.* at ¶ 49 (pp. 20–21).

## ANALYSIS

"The FCA imposes civil liability on a series of actions related to fraudulent treatment of

government funds." *Lanahan*, 41 F.4th at 861 (citing 31 U.S.C. § 3729(a)(1)). A private citizen,

referred to as a "relator," may bring an action under the FCA "in the name of the Government."

*Id.* (quoting 31 U.S.C. § 3730(b)(1)). Although not specifically alleged in the Amended

---

[1] The other two specific instances replace "ICD 90901" with "ICD 96101," alleging: "The biofeedback billed as therapy is false and fraudulent since ICD *96101* is not covered." Am. Compl. ¶¶ 38(1), (3) (emphasis added). The Amended Complaint provides no information about ICD Code 96101.
[2] The numbers for paragraphs 45–49 are used twice in the Amended Complaint.

Complaint, which references only generally "31 U.S.C. § 3729 et seq.," it appears that the Relator is alleging violations of § 3729(a)(1)(A) and (B).

Under § 3729(a)(1)(A), civil liability is imposed when "a person 'knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval' to the government." *Lanahan*, 41 F.4th at 862 (quoting 31 U.S.C. § 3729(a)(1)(A)). A claim brought under this section requires the Relator to "plead with particularity (1) the existence of a false or fraudulent claim that (2) [the Defendant] presented to the government for payment (3) with knowledge the claim was false." *Id.* (citation omitted). Under § 3729(a)(1)(B), civil liability is imposed when a person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id.* (quoting 31 U.S.C. § 3729(a)(1)(B)). To state a claim under this section, the Relator must plead that the Defendant "(1) made a statement in order to receive money from the government, (2) the statement was false, (3) [the Defendant] knew the statement was false at the time it made the statement, and (4) the statement was material to the government's decision to give [the Defendant] money." *Id.* (citation omitted).

In its Motion to Dismiss, the Defendant argues that the Relator's Amended Complaint fails to plead facts with the necessary specificity for a fraud claim for several reasons. Despite being given an opportunity to do so, the Relator has not responded to the Defendant's individual arguments. The Court first considers the motion as to the Relator's claims based on the use of "non-standardized photocopies" and then turns to the claim of "upcoding."

**A.      Non-Standardized Photocopies**

As argued by the Defendant, the Relator's claims based on the use of "non-standardized photocopies," including those under the subheading "Social Security Disability Testing," "falter at the first element" because the Relator has not alleged any false claim or false statement for

8

payment with the necessary degree of specificity required by Rule 9(b). *See id.* The Realtor

offers no substantive response in support of these claims.

The "archetypical" FCA claim is one in which a "claim for payment is itself literally false

and fraudulent." *Molina Healthcare*, 17 F.4th at 740 (citation omitted). However, "courts have

identified particular theories that support FCA claims, including (1) false certification to the

government that the party has complied with a statute, regulation, or condition of payment;

(2) promissory fraud, or fraud in the inducement; and (3) implied false certification." *Id.* The

Defendant argues that the Relator fails to identify with particularity a single actionable express or

implied certification that it made. The Court agrees that the Relator has not alleged a "literally

false or fraudulent" claim related to the use of photocopies in psychological testing. And,

although the Relator makes the bald assertion that the Defendant made a "false and fraudulent

claim they used standardized testing," Am. Compl. ¶ 29, the Relator has not identified any such

express statement made to the government for payment.[3] Thus, the Relator must be proceeding

on an implied false certification theory, if any.

A claim brought on a theory of "implied false certification" alleges the "omission of key

facts rather than affirmative misrepresentations." *Molina Healthcare*, 17 F.4th at 740. An

implied false certification claim "arises if the 'defendant makes representations in submitting a

claim but omits its violations of statutory, regulatory, or contractual requirements[;] those

omissions can be a basis for liability if they render the defendant's representations misleading

with respect to the goods or services provided.'" *Id.* (quoting *Universal Health Servs., Inc. v.

United States ex rel. Escobar*, 579 U.S. 176, 187 (2016)). This liability "does not turn upon

---

[3] The only reference to a certification is the allegation that a patient's record must contain "adequate documentation, . . . including certification of standardized test results [that] apply to the ICD Code on the claim form." Am. Compl. ¶ 15. But this is not an express certification made to the Government.

whether those requirements were expressly designated as conditions of payment"; rather, what matters is "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." *Escobar*, 579 U.S. at 181.

First, the Defendant is correct that the Relator has not identified with specificity any such implied certification made by the Defendant to the government. The Amended Complaint alleges generally that claims for reimbursement from Medicare and Medicaid are submitted on the CMS 1500 paper form (or its electronic equivalent, the X12 837 form) and that the Defendant submitted claims for payment. Am. Compl. at ¶¶ 13–14, 22. The Amended Complaint also alleges that the Defendant did not have adequate documentation in its patient records of a "certification of standardized test results." *Id.* at ¶ 15. Although not specifically identified by the Relator, the Court takes judicial notice that, by signing the CMS 1500 form, the signatory certifies, among other things, that

> [i]n submitting this claim for payment from federal funds, . . . 1) the information on this form is true, accurate and complete; 2) I have familiarized myself with all applicable laws, regulations, and program instructions, which are available from the Medicare contractor; 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision; [and] 4) this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment . . . .

Health Insurance Claim Form, https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500.pdf (last visited Aug. 23, 2022). Thus, to the extent this certification is the basis of the Relator's claims, the Relator would be alleging that the Defendant committed fraud by omitting its alleged violation of a requirement regarding the use of photocopies in standardized testing when it signed and submitted the CMS 1500 form but did not have adequate documentation in its patient records of a "certification of standardized test results." *Id.* at ¶ 15.

This claim fails because the Realtor has not alleged with particularity a statutory, regulatory, or contractual violation that was impliedly omitted when the Defendant signed the CMS 1500 form or any other certification to the government. The Amended Complaint alleges generally that billing by healthcare providers seeking reimbursement from Medicare is governed by two specific manuals and that billing from Medicaid is governed by established billing and coding requirements. However, the Relator does not identify, either in the Amended Complaint or her response brief, any provision of any manual or policy that governs the use of photocopies for psychological testing or regarding the certification of psychological testing in a patient's record. The Relator's general citation to governing rules and regulations does not satisfy the particularity requirement of Rule 9(b) for allegations of fraud.

It appears that the Relator's case is premised upon her subjective belief that the licensed professional mental healthcare providers working for the Defendant provided substandard care during patient testing and that, if the Defendant knew of substandard care and still billed for the substandard care, then the Defendant submitted a false claim. The Defendant argues that the Relator has alleged only what appears to be her opinion that using photocopies is not best practices and her subjective belief that the Defendant's licensed professional mental healthcare providers offered substandard care during patient testing. Indeed, the Relator alleges, without citation to authority, that "standardization" is the "uniformity of procedures and testing materials; every test taker gets tested in the same manner with original standardized tests." Am. Compl. ¶ 21. Notably, the Relator does not allege that any of the licensed mental health professionals who conducted the tests had any issue with the reliability of the test results. The Relator does not respond to this challenge in the Defendant's motion.

In *Presser*, the relator challenged the "propriety of [a] four-person evaluation process, mandatory drug screenings, and policies on prescription refills and appointments," alleging that

the "policies violate 42 U.S.C. § 1395y(a)(1)(A), which states that the Medicare program will not provide reimbursement for services which 'are not reasonable and necessary for the diagnosis or treatment of illness or injury.'" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779 (7th Cir. 2016). However, the court found that the relator provided "no medical, technical, or scientific context which would enable a reader of the complaint to understand why [the defendant's] alleged actions amount to unnecessary care forbidden by the statute." *Id.* Similarly, the Relator in this case alleges that the Defendant's use of photocopies for psychological testing renders the test results "non-standardized" but identifies no statute, regulation, rule, contract provision, or other standard to support this assertion such that a submitted claim for reimbursement would be fraudulent.

Nor is it enough for the Relator to allege that the use of copies is a copyright violation because there is no alleged connection between a copyright violation and a false statement for payment. *Lanahan*, 41 F.4th at 862–63 ("Relator's assertions of regulatory or contractual violations are similarly incapable of establishing an FCA claim absent some connection between the breaches and a false statement or claim for payment, which Relator has not pleaded." (citations omitted)). For all these reasons, the Relator's claims based on the use photocopies in psychological testing fail because she has not alleged a false statement with the requisite specificity.

These claims also fail on the element of materiality. "[T]he defendant's conduct must meet a strict materiality requirement." *Molina Healthcare*, 17 F.4th at 740 (citing *Escobar*, 579 U.S. at 181). The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Escobar*, 579 U.S. at 182 (citing 31 U.S.C. § 3729(b)(4)). Because "[t]he standard for materiality . . . is a familiar and rigorous one[,] . . . False Claims Act plaintiffs must also plead their claims with plausibility and

12

particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." *Escobar*, 579 U.S. at 195 n.6. "It is not enough simply to say that the government required compliance with a certain condition for payment. The facts must indicate that the government actually attaches weight to that requirement and relies on compliance with it." *Molina Healthcare*, 17 F.4th at 740. Here, the Relator has failed to allege facts to show that the use of photocopies in psychological testing is material to the decision of government payors whether to pay a claim. For example, the Relator has failed to allege facts to show the existence of the government's compliance priorities that were allegedly violated. The bald allegation that the government and government subsidized insurance entities "do not pay" for tests using "non-standardized photocopies," Am. Compl. ¶¶ 27(1)–(23), is conclusory with no factual support and insufficient to state a claim of fraud.

Finally, for the claims under the heading "Excessive Testing," the only facts offered in support of the four specific incidents listed is the use of "stapled photocopies instead of standardized original psychological tests." *Id.* at ¶ 47. No facts are alleged to show unnecessary or duplicative testing as to any individual patient. The fact that the majority of patients were given more than one test is not an allegation of excessive testing without any allegation that the tests were unnecessary or duplicative. *See id.* at ¶ 46. The Court is not "obligated to accept 'sheer speculation, bald assertions, and unsupported conclusory statements' on a motion to dismiss." *Lanahan*, 41 F.4th at 862 (quoting *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020)). Thus, dismissal of the Relator's claims based on excessive testing is also proper.

For these reasons, the Court dismisses all the Relator's claims based on the alleged used of "non-standardized photocopies," including those under the Amended Complaint subheadings "Social Security Disability Testing" and "Excessive Testing." The Court need not consider the

Defendant's additional arguments as to whether the Relator identified specific claims submitted for payment and whether the Relator sufficiently pleaded the knowledge requirement.

*2.      Upcoding*

The Amended Complaint also alleges that the Defendant engaged in "upcoding" on three specific dates when Stacey Lefing, Psy.D. performed neuro feedback, an allegedly non-covered treatment, on specific patients but the ICD Code for therapy, an allegedly covered treatment, was used on the bill submitted to and paid by government subsidized insurance, Medicare, or Medicaid. Am. Compl. ¶ 38. This claim "involves an express false statement." *See Presser*, 836 F.3d at 779 ("Here, Acacia and Mr. Freund allegedly billed Medicaid *for a completely different treatment*."). However, as argued by the Defendant, the Relator does not allege that Dr. Lefing knowingly used the incorrect code or that Dr. Lefing was prompted to use an allegedly inaccurate code as part of a fraudulent scheme to obtain government payment. Again, the Relator offers no response in support of this claim.

The FCA only imposes liability on one who "knowingly presents" to the government "a false or fraudulent claim for payment." 31 U.S.C. § 3729(a). "The Act's scienter requirement defines 'knowing' and 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'" *Escobar*, 579 U.S. at 182 (quoting 31 U.S.C. § 3729(b)(1)(A)). This is a "rigorous" requirement. *Id*. at 192. Yet, "proof of specific intent to defraud" is not required. 31 U.S.C. § 3729(b)(1)(B). Nevertheless, mistake or negligence do not give rise to an FCA claim. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 842 (7th Cir. 2018) (citation omitted). And, "a violation of a regulation 'is not synonymous with filing a false claim.'" *Id.* (quoting *United States ex rel. Grenadyor v.*

*Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014)). As noted at the outset, knowledge may be alleged generally under Rule 9(b).

Here, the Relator has not alleged that the three claims were submitted with knowledge that they were false. The Amended Complaint alleges generally that "[the Defendant] billed and received payment for therapy when providing biofeedback services, even though therapy services were not part of the treatment" and that "[t]hese practices caused bills to be knowingly and intentionally transmitted . . . to Medicare and Medicaid . . . to get false or fraudulent claims paid." Am. Compl. ¶¶ 36, 37. Then, in paragraph 38, the Relator provides the allegations regarding the three specific allegations of upcoding. Although Rule 9(b) permits knowledge to be alleged generally, the Relator has failed to allege that Dr. Lefing or a different person knowingly used the incorrect code for each of the three instances. The Relator's vague and conclusory allegations regarding general practices fall short of those necessary to bring a fraud claim on the three specific instances alleged in the Amended Complaint. The Court grants the motion to dismiss the Relator's claim based on upcoding. *Cf. United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 303 (7th Cir. 2021) (finding that FCA claim based on the knowing use of incorrect billing codes was sufficiently alleged); *Presser*, 836 F.3d at 778–79 (same).

3.    *Dismissal with Prejudice*

The Defendant asks for dismissal with prejudice. Although Federal Rule of Civil Procedure 15(a)(2) provides that the Court should freely grant leave to amend a pleading "when justice so requires," Fed. R. Civ. P. 15(a)(2), district courts have "'broad discretion' to deny leave to amend, 'where there has been undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile,'" *Huon v. Denton*, 841 F.3d 733, 745 (7th Cir. 2016) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). The Court has already afforded the Relator an opportunity to file an

15

Amended Complaint. Yet, the Amended Complaint fails to state a claim, and the Relator provided no substantive response in opposition to the motion to dismiss. While the Relator's response brief suggests that she could try to "fix" the Amended Complaint following the Court's ruling, the Relator does not directly request leave to file an amended pleading or argue why an amendment would not be futile. Therefore, the Court finds that dismissal with prejudice is proper. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing.").

## CONCLUSION

Based on the foregoing, the Court hereby GRANTS Defendant Mid-America Psychological & Counseling Services, P.C.'s Motion to Dismiss Relator's Amended Complaint [ECF No. 49] and DISMISSES the Amended Complaint with prejudice.

SO ORDERED on August 24, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT